**B25B (Official Form 25B) (12/08)**

# United States Bankruptcy Court

## NORTHERN            District of  NEW YORK

In re  L&A Automotive Center, Inc.            Case  No.13-12544
_____Debtor

Small Business Case under Chapter 11

## L&A AUTOMOTIVE CENTER INC.'S DISCLOSURE STATEMENT, DATED JULY  14, 2013

## Contents

L&A AUTOMOTIVE CENTER INC.'S DISCLOSURE STATEMENT, DATED JULY  14, 2013 .............. 1

Table of Contents...................

I.     INTRODUCTION ................. 2

A.   Purpose of This Document 2

B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............... 2

C.   Disclaimer ......................... 3

B.   Insiders of the Debtor ....... 3

C.   Management of the Debtor Before and During the Bankruptcy ................................ 4

D.   Events Leading to Chapter 11 Filing ..................................... 4

E.   Significant Events During the Bankruptcy Case ................. 4

F.   Projected Recovery of Avoidable Transfers (None) ...... 4

G.   The Debtor does not intend to pursue avoidance actions ..... 4

H.   Claims Objections ............. 4

I.   Current and Historical Financial Conditions.................. 4

III.     SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF  CLAIMS AND EQUITY INTERESTS .................... 5

B.   Unclassified Claims ........... 5

C.   Classes of Claims and

Equity Interests ......................... 7

D.   Means of Implementing the Plan    10

E.   Risk Factors .................... 10

F.   Executory Contracts and Unexpired Leases  10

G.   Tax Consequences of Plan 10

IV.     CONFIRMATION REQUIREMENTS AND PROCEDURES        10

The deadline for filing a proof of claim in this case was April 14, 2014. ................................... 11

Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.......... 12

A.   Votes Necessary to Confirm the Plan        12

You should consult your own attorney if a cram down confirmation will affect your claim or equity  interest, as the variations on this general rule are numerous and complex.        12

D.   Feasibility ........................ 13

You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.     13

A.   Modification of Plan ........ 14

B.   Final Decree .................... 14

EXHIBITS .................................. 15

Plan Proponent's Estimated Liquidation Value of Assets        20

Total Assets at Liquidation Value        20

Less:......................................... 20

Less:......................................... 20

Less:......................................... 20

[Less: ....................................... 20

Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:     20

$22,500 .................................... 20

Cash on hand on effective date of the Plan:   $235,700  21

- ............................................... 21

**B25B (Official Form 25B) (12/08) – Cont.**                                                                              2

## I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of <u>L & A Automotive Center Inc.</u>(the Debtor). This Disclosure Statement contains information about the Debtor and describes the (the "Plan") filed by the Debtor on July 14, 2014.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages 7- 11  of this Disclosure Statement.  General unsecured creditors are classified in one Class, and will receive a distribution of <u> 100 </u>% of their allowed claims, to be distributed as follows: Monthly over a period of 84 months or more rapidly as circumstances allow.

### A.    **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Proponent believes the  Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1.    *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on _____, at 10:30 A.M. in  Bankruptcy Court, Room 330 at The James T. Foley U.S. Courthouse, 445 Broadway, Albany, NY 12207.

#### 2.    *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Richard H. Weiskopf ,Esq., 12 Cornell Road, Latham, NY 12110  See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____or it will not be counted.

3.    *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon all parties in interest by _____.

4.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact the attorney for the Debtor.

C.    **Disclaimer**

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. [The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.  Objections to the adequacy of this Disclosure Statement may be filed until_____.]*

## II.    BACKGROUND

A.    **Description and History of the Debtor's Business**

The Debtor is a corporation.   For forty years, the Debtor has been in the business of auto repairs, body work, towing and used car sales.

B.    **Insiders of the Debtor**

1) Lewis A. Polsinelli, Jr. is the principal of the Debtor and its manager. Mr. Polsinelli draws a regular salary from the operations and devotes his full time and attention to the affairs of the Debtor. He draws $700.00 per week and receives a company vehicle, fuel, car insurance and a cell phone and has done so over the period of the last two years and during the administration of this bankruptcy.

2) L & A Automotive Salvage, Inc. is another company in which the principal of the Debtor is the sole shareholder. This company maintains a junk yard and the only connection to the Debtor is the identity of the common shareholder. Any dealings between the companies are at arm's length with purchases booked accordingly.

3) L & A Towing and Recovery Center, Inc., was formed in  2011 and holds title to the towing vehicles used by the debtor. Transfer occurred without the exchange of consideration. Debtor was advised by its insurance agent to proceed in this fashion to save on the cost of insuring the vehicles to the Debtor. *Value of the vehicles is attributed to the Debtor for liquidation*

B25B (Official Form 25B) (12/08) – Cont.                                         4
*analysis*.

C.     **Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the officer, director, manager or other person in control of the Debtor(collectively the "Managers") was Lewis A. Polsinelli, Jr. and during this case as well.  After the effective date of the order confirming the Plan, the director, officer and manager will be: Lewis A. Polsinelli, Jr. at the same compensation schedule as noted above.

D.     **Events Leading to Chapter 11 Filing**

Two events  precipitated the filing of the Chapter 11 proceeding:  the  imminent foreclosure proceeding on the real property owned by the Debtor for delinquent real property taxes due to the County of Schenectady and  the entry of a judgment against the Debtor(currently on appeal) and the potential for enforcement of that judgment.

E.     **Significant Events During the Bankruptcy Case**

Debtor has continued in the operation of its business during the pendency of this proceeding and has been marginally profitable. Debtor will not be able to fund reorganization and continue in the operation of its business without the infusion of outside capital which will be provided by its Principal.

F.     **Projected Recovery of Avoidable Transfers (None)**

G.     **The Debtor does not intend to pursue avoidance actions**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions. There is an avoidance action that could be maintained by the Debtor against the entity that secured a judgment against the Debtor within 90 days prior to filing its case. Due to the liquidation value of the Debtor, this creditor along with all other creditors, will have 100% of its debt repaid whether its status is as a secured creditor with a judgment or as an unsecured creditor.

H.     **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

I.     **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in Exhibit B.  Since assets have sufficient value to return a distribution of 100% to all creditors whose claims are allowed, no formal evaluations have been conducted.

The Debtor's most recent financial statements, if any, issued before bankruptcy, each of which  was filed with the Court, would be set forth in Exhibit C, but the Debtor did not issue any such reports so that Exhibit C consists of the income statement from the  last filed operating report.  Since the Debtor has no conventional lending, there have been no prepetition financial statements in recent years.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit D.

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.    **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

6

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | 0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | 0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | 5,000 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | 0.00 | Paid in full on the effective date of the Plan |
| Other administrative expenses NYS Dept, of Labor ( disputed) | 7,850.75 | Debtor must demonstrate validity of entitlement before claim will be paid and upon what terms. |
| Office of the U.S. Trustee Fees | To be determined | Paid in full on the effective date of the Plan |
| TOTAL | | |
| | | |

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

B25B (Official Form 25B) (12/08) – Cont.                                                         7

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment | |
|---|---|---|---|---|
| NYS | 5647.09 | | Pmt interval | =monthly |
| | | | Monthly payment | =124.99 |
| | | | Begin date | =Oct., 2014 |
| | | | End date | =Sept. 2018 |
| | | | Interest Rate % | =3 |
| | | | Total Payout Amount | = $5.999.52 |
| IRS | 8119.87 ((balance of claim (estimated) to be paid when returns filed by August 31, 2014)) | | Pmt interval | =monthly |
| | | | [Monthly] payment | =179.73 |
| | | | Begin date | =Oct. 2014 |
| | | | End date | =Sept. 2018 |
| | | | Interest Rate % | =3 |
| | | | Total Payout Amount | = $8627.04 |
| NYS Department of Labor | 6822.25 | | Pmt interval | =monthly |
| | | | Monthly payment | =151.01 |
| | | | Begin date | =Oct. 2014 |
| | | | End date | =Sept. 2018 |
| | | | Interest rate% | =3 |
| | | | Total Payout Amount | =7248.28 |

### C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

**B25B (Official Form 25B) (12/08) – Cont.**                                                                8

The following chart lists all classes containing Debtor=s secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 2 | *Secured claim of:* Name =County of Schenectady<br><br>Collateral description =19<br><br>Maple Avenue Glenville, NY 12302<br><br>Allowed Secured Amount = $111,997.36<br><br>Priority of lien =<br><br>1st<br><br>_____ | No | unimpaired | Paid upon sale or refinancing of principal's residence or 10/31/2015 (whichever first occurs) or Sec. 363 auction thereafter<br><br>Interest rate % 12 |
| 2 | *Secured claim of:* Name =Long Oil Heat, Inc<br><br>Collateral description = 19<br><br>Maple Avenue Glenville, NY 12302<br><br>Allowed Secured Amount = $59,367.32<br>Priority of lien =2nd<br><br>Principal owed = $59,367.32<br>Total claim = $59,367.32<br><br>Claim is on appeal in NYS Appellate Division | No | unimpaired | Paid upon sale or refinancing of principal's residence or 10/31/2015 (whichever first occurs) or Sec. 363 auction thereafter.<br><br>Interest rate 0 % ( since judgment is voidable) |

### 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment. The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:  **None**

### 3.    Class of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class[es]     through    , which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | General Unsecured Class | unimpaired | Monthly Pmt =281.80<br>Pmts Begin =October , 2014<br>Pmts End =September 2021<br>[Balloon pmt] =Debtor reserves the right to pay by 11/30/2015 from outside revenues provided by the principal of the Debtor or Debtor refinancing its real estate<br>Estimated percent of claim paid = 100% |

### 4.   Class of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Equity interest holders | impaired | Existing shares of the Debtor shall be cancelled with new shares issued to the Debtor's Principal for funding in value to satisfy secured debt derived from the sale or refinancing of the Principal's residence. |

B25B (Official Form 25B) (12/08) – Cont.                                                    10

### D.    Means of Implementing the Plan

#### 1.    *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Business revenues and funding realized from sale or refinancing of the residence of

the principal of the Debtor, which will realize sufficient funds to satisfy secured,

and to some or all of an extent, unsecured debt.

#### 2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Lewis A Polsinelli, Jr | | Yes | manager | $700 per week plus benefits |
| | | | | |
| | | | | |

### E.    Risk Factors

The proposed Plan has the following risks:

The principal of the Debtor's residence is currently listed for sale. The market for sales of residences in this price range and location is unknown. The principal of the Debtor is in litigation with his mortgage lender over the amount due on the mortgage; however, this activity should be concluded before the hearing on this Disclosure Statement

### F.    Executory Contracts and Unexpired Leases
### NONE

### G.    Tax Consequences of Plan

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.

11

These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

## A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that  the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that no classes are impaired and that holders of claims in each of these classes are not entitled to vote to accept or reject the Plan.

### 1.    *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was April 14, 2014.***

### 2.    *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.    *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

A.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by cram down on non-accepting classes, as discussed later in Section [B.2.].

1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cram down confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7  liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

### D.    Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. This will be sourced from the infusion of proceeds from the sale or refinance of the principal of the Debtor's residence on or before October 31, 2015 or the auction of the assets of the debtor immediately after that date.  Tables showing the amount of cash on hand on the effective date of the Plan and the sources of that cash are attached to this disclosure statement as Exhibit F.

2.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $12,000. The final Plan payment is expected to be paid on September, 2021, or sooner from the proceeds of sale or refinance of the Debtor's principal's residence.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    DISCHARGE OF DEBTOR

Discharge.  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject, however to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind

**B25B (Official Form 25B) (12/08) – Cont.**                                                    14

specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will
be    limited to the debts described in clauses (i) through (iii) of the preceding sentence.


### A.      Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.
However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1)
the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed
modifications after notice and a hearing.


### B.      Final Decree


The effective date of the Plan shall not occur until after the funds derived from the sale or
refinancing of the Debtor's Principal's residence is deposited into the Debtor –in –Possession account
and distribution is made.  This should occur no later than November 30, 2015. The Bankruptcy court
shall continue to have jurisdiction to hear appropriate applications of parties in interest and the case will
continue to be supervised through the offices of the United States Trustee until that event shall occur.


Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules
of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the
Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.
Alternatively, the Court may enter such a final decree on its own motion.

Dated  July ___, 2014.



_____
Lewis S. Polsinelli, Jr.


_____
Richard H. Weiskopf

**B25B (Official Form 25B) (12/08) – Cont.**

# EXHIBITS

**B25B (Official Form 25B) (12/08) – Cont.**

**Exhibit A**  Copy of Proposed Plan of Reorganization

**B25B (Official Form 25B) (12/08) – Cont.**                                                                 17

**Exhibit B**  Identity and Value of Material Assets of Debtor


The Debtor's assets consist of the real property upon which the business premises is located in Glenville, New York together with the machinery and equipment that is located on the site.  The towing vehicles utilized by the Debtor are owned by an affiliate and are no longer titled to the Debtor, however the value of such vehicles are included in the liquidation analysis.  The Debtor also maintains an inventory of used vehicles for resale and parts and fluids for motor vehicle repair. The assets of the debtor are not unencumbered by mortgages or liens except to the creditors that are listed as having secured claims against the Debtor: Long Oil and the County of Schenectady. Thus there are no consensual liens on the real estate or the other assets of the Debtor.  The remaining values of the assets permit a distribution to creditors of 100 per cent.

**B25B (Official Form 25B) (12/08) – Cont.**                                                                    18

**Exhibit C**  Prepetition Financial Statements (to
be taken from those filed with the court)

Since the Debtor has no conventional lending, there have been no prepetition financial statements in
recent years. Attached hereto is the Income and Expense statement that the Debtor filed in its last
monthly operating report

**B25B (Official Form 25B) (12/08) – Cont.**                                                              19

**Exhibit D**   Most Recently Filed Post petition Operating Report

The most recently filed monthly operating report is for the period of May, 2014

B25B (Official Form 25B) (12/08) – Cont.

## Exhibit E – Liquidation Analysis

*Plan Proponent's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $5,000 |
| b. | Accounts receivable | $0.00 |
| c. | Inventory | $15,000 |
| d. | Office furniture & equipment | $300 |
| e. | Machinery & equipment | $6,800 |
| f. | Automobiles | $0.00 |
| g. | Building & Land | $450,000 |
| h. | Customer list | $0.00 |
| i. | Investment property (such as stocks, bonds or other financial assets) | $0.00 |
| j. | Lawsuits or other claims against third-parties | $0.00 |
| k. | Other intangibles – L&A Towing vehicles from Debtor | $22,500 |

| | |
|---|---|
| *Total Assets at Liquidation Value* | **$499,600** |

**Less:**
Secured creditors recoveries          **$197,124**

**Less:**
Chapter 7 trustee fees and expenses          $26,792.50

**Less:**
Chapter 11 administrative expenses          $0.00

**Less:**
Priority claims, excluding administrative expense claims          $21,000

**[Less:**
Debtor's claimed exemptions]          $0.00

(1) Balance for unsecured claims          $254,68350

(2) Total dollar amount of unsecured claims          $30,000 (est)

*Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:*          $100%

*Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:*          100 % [Divide (1) by (2)]

100      %

**B25B (Official Form 25B) (12/08) – Cont.**                                              21

Exhibit **F** – Cash on hand on the effective date of the Plan

**Cash on hand on effective date of the Plan**:                           $235,700

*Less*

| | |
|---|---|
| Amount of administrative expenses payable on effective date of the Plan | - 13,000 |
| Amount of statutory costs and charges | - 0.00 |
| Amount of cure payments for executory contracts | - 0.00 |
| Other Plan Payments due on effective date of the Plan | - 197,124.07 |
| Balance after paying these amounts............... | $ 25,575.93 |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| $1500 | Cash in Debtor's bank account now |
| +4,200 | Additional cash Debtor will accumulate from net earnings between now and effective date of the Plan through Debtor's ability to save net profit |
| +0.00 | Borrowing |
| +230,000 | Capital Contributions from Debtor's principal |
| + | Other |
| $235,700 | Total [This number should match "cash on hand" figure noted above |

**B25B (Official Form 25B) (12/08) – Cont.**                                                   22

**Exhibit G**   Projections of Cash Flow and Earnings for Post-Confirmation Period

After normal operating expenses and with no sales of used car inventory, the Debtor is capable of generating a surplus of about $1,000 per month from normal operating revenues.  This level of income should allow it to meet its plan obligations going forward. The infusion of the capital contribution from the Debtor's principal will enable the Debtor to either complete all payments due under the Plan or continue payments to the unsecured creditors thereafter until paid in full.

| Date | Gross Income | Expense | Net Income | Payments | Balance |
|------|-------------|---------|-----------|----------|---------|
| 6/14 | 25,000 | 24,000 | 1,000 | 737.53 | 262.47 |
| 7/14 | 25,000 | 24,000 | 1,000 | 737.53 | 524.94 |
| 8/14 | 25,000 | 24,000 | 1,000 | 737.53 | 787.42 |
| 9/14 | 25,000 | 24,000 | 1,000 | 737.53 | 1,049.88 |
| 10/14 | 25,000 | 24,000 | 1,000 | 737.53 | 1,312.35 |
| 11/14 | 25,000 | 24,000 | 1,000 | 737.53 | 1,574.82 |
| 12/14 | 25,000 | 24,000 | 1,000 | 737.53 | 1,837.29 |
| 1/15 | 25,000 | 24,000 | 1,000 | 737.53 | 2,099.76 |
| 2/15 | 25,000 | 24,000 | 1,000 | 737.53 | 2,362.23 |
| 3/15 | 25,000 | 24,000 | 1,000 | 737.53 | 2,624.70 |
| 4/15 | 25,000 | 24,000 | 1,000 | 737.53 | 2,887.17 |
| 5/15 | 25,000 | 24,000 | 1,000 | 737.53 | 3,149.64 |
| 6/15 | 25,000 | 24,000 | 1,000 | 737.53 | 3,412.11 |
| 7/15 | 25,000 | 24,000 | 1,000 | 737.53 | 3,674.58 |
| 8/15 | 25,000 | 24,000 | 1,000 | 737.53 | 3,937.05 |
| 9/15 | 25,000 | 24,000 | 1,000 | 737.53 | 4,199.52 |
| 10/15 | 255,000 | 24,000 | 231,000 | 737.53 | 230,262.47 |
| 11/15 | 25,000 | 24,000 | 1,000 | 210,124.00 | 21,138.47 |
|  |  |  |  |  |  |

**B25B (Official Form 25B) (12/08) – Cont.**

**B25B (Official Form 25B) (12/08) – Cont.**